STATE of Arkansas *v.* David MASSERY

CR 89-91                                             790 S.W.2d 175

Supreme Court of Arkansas
Opinion delivered June 11, 1990

448

*Steve Clark*, Att'y Gen., by: *Clint Miller*, Asst. Att'y Gen., for appellant.

No brief filed.

DAVID NEWBERN, Justice. The state has appealed the acquittal of the appellee, David Massery, who was tried for driving while intoxicated. It is contended that the appeal is authorized by Ark. R. Crim. P. 36.10(b) and (c) because an error has been committed in the trial court which will prejudice the state and review is, as provided in subsection (c) of the rule, required for "the correct and uniform administration of the criminal law." We find no such issue here and thus dismiss the appeal.

Massery was observed by patroling officers driving erratically in the parking lot of a grocery store. He failed a field sobriety test and was taken into the station for a blood-alcohol test. A breathalyzer test was administered, and Massery was arrested on the basis of a blood alcohol reading of .116.

The state presented Officer Keyes as its first witness. He testified about certification of the breathalyzer machine used in this case and his personal certification as an operator. He testified about the procedure used to calibrate the machine. Massery's counsel questioned Keyes about the simulator device used in the calibration process. In the course of extended examination and cross-examination, Keyes said the simulator was one manufactured by the Stephenson company and was on the list of simulators approved by the state health department. When asked how he knew it was a Stephenson machine, he said it had been in use many years and at one time had had a Stephenson label on it.

The "Arkansas Regulations for Blood Alcohol Testing" along with addendum letters published by the Arkansas Department of Health were introduced as an exhibit. Several Stephenson model simulator machines are listed as approved. Officer

Keyes could not say that the machine used in this case was any one of the approved models.

The court ruled that the results of the test and the testimony of the officer were to be excluded because the officer did not know whether the particular simulator used was on the approved list. The court ultimately ruled that the State had failed to meet its burden of proof without the test results and dismissed the charges against appellee. The State appeals the ruling striking the testimony of Officer Keyes.

The state argues that the trial court has created a new burden of proof in these cases and that it is one which is not required by the statute or supported by the case law. It is asserted that there is no requirement in the rules of evidence or of criminal procedure that a certified intoxilyzer operator possess firsthand knowledge concerning the brand and make of the simulator that he used to calibrate the Intoxilyzer at issue, and our holding in *Smith* v. *State*, 301 Ark. 569, 785 S.W.2d 465 (1990), cited to support that assertion.

The precise holding of the *Smith* case is as follows:

Arkansas Code Ann. § 5-65-206(d)(1) (1987) does not require the machine operator's testimony, or his certificate, as a prerequisite to the introduction of chemical analysis test results. This court adopts the rationale of the Arkansas Court of Appeals in its holding in the case of *Johnson* v. *State*, 17 Ark. App. 82, 703 S.W.2d 475 (1986), that the provision only requires that the person who calibrates the machine, and the person who operates it, will be made available for cross-examination by the defense upon reasonable notice to the prosecutor.

However, there is ample evidence in the record of this case to uphold the verdict of the lower court aside from the results of the breathalyzer test.

The case does hold that the certificate of the officer and his testimony are not threshold requirements under the statute but makes it equally clear that the officer should be available for cross-examination. The only logical purpose for such cross-examination is for the defense counsel to challenge the certification either of the machine or of the officer in the context of the

particular case. This is precisely what occurred here. The officer appeared for cross-examination and during his testimony revealed that he did not know for certain what simulator he was using because the device used had lost its label. He assumed it was one of the two approved devices because the entire unit had been approved by the health department, but nothing in the testimony made it clear that this particular device is the one that is approved.

The propriety of the certification of the machine was called into question in the mind of the trial judge, and he was not convinced that the officer had adequate knowledge to state with certainty that the simulator he used was approved. This led the trial judge to conclude that the test results and the testimony with regard to the test lacked an adequate foundation.

The question in this appeal is not whether the trial court created a new evidentiary requirement. Rather, it is who is the proper party to make this type evidentiary determination, and is it permissible for us to second guess the trial court in this regard? In other contexts our case law supports the conclusion that, in evidentiary determinations, the trial court has wide discretion, and we will not reverse absent an abuse of that discretion. *Pollard* v. *State*, 296 Ark. 299, 756 S.W.2d 455 (1988). This is especially true where the issue is one of witness credibility. *Hurst* v. *State*, 296 Ark. 448, 757 S.W.2d 558 (1988). Any conflict in a witness' testimony is for the trial court to resolve. *Smith* v. *State*, 296 Ark. 451, 757 S.W.2d 554 (1988). Determinations of an expert's qualifications lie within this discretion and such a decision will not be reversed absent an abuse. *Bowden* v. *State*, 297 Ark. 160, 761 S.W.2d 148 (1988).

The trial judge was acting within his discretion in permitting the inquiry. He could have held substantial compliance was shown based on the officer's assertions that this was the approved device at the time of the certification, and it is doubtful we would have reversed. The judge characterized the problem as one of the testimony of Officer Keyes lacking a proper foundation. We cannot say that amounted to an abuse of discretion.

While Ark. R. Crim. P. 36.10(c) provides that the attorney general must make the determination whether this is the sort of case we should take on appeal, the ultimate decision rests

clearly with this court. If we were to reach the issue posed, it would have no universal affect on the administration of the law. The decision we are asked to review was factual.

Our rule on taking appeals by the state in criminal cases dates back as far as §§ 3410-11 of *Crawford & Moses Digest* which contained the same language permitting such appeals for the correct and uniform administration of justice. In *State* v. *Massey*, 194 Ark. 439, 107 S.W.2d 527 (1937), we were presented with an appeal by the state of a trial court's decision that evidence to corroborate accomplice testimony had been insufficient. We regard that as similar to the question here of whether the foundation evidence was sufficient. We wrote "[i]n this case the error complained of did not relate so much to a question of law as one of fact, or a mixed question of law and fact. It does not appear to be of sufficient importance under the provisions of the statute as to require an opinion upon the correctness of the conclusion reached by the trial judge." *See also State* v. *Spear*, 123 Ark. 449, 185 S.W. 788 (1916).

Appeal dismissed.

HAYS and GLAZE, JJ., dissenting.

STEELE HAYS, Justice, dissenting. The trial court excluded the results of an Intoxilyzer Test because the officer, B.R. Keyes, did not have personal knowledge that the simulator he used to calibrate the Intoxilyzer was a brand of simulator approved by the Arkansas Department of Health in its Regulation 4.31. In so doing, I believe the trial court placed a greater burden on the state than either our statutes or case law require. The state is fully justified, as I see it, in appealing that ruling.

It was not disputed at trial that the Breathalyzer was approved and certified, rather, at issue was a Stephenson "simulator" used to test the Breathalyzer. Keyes testified that he knew it was a Stephenson simulator and that inspectors from the Department had approved that specific simulator on several prior occasions, most recently just before the test was administered to Massery. Since we have consistently held that substantial compliance with regulations of the State Health Department in DWI cases is sufficient, I submit the trial court erred and this court

should so state. *Smith* v. *State*, 301 Ark. 569, 785 S.W.2d 465 (1990); *Tharp* v. *State*, 294 Ark. 615, 745 S.W.2d 612 (1988); *Marx* v. *State*, 291 Ark. 325, 724 S.W.2d 456 (1987); *Sparrow* v. *State*, 284 Ark. 396, 683 S.W.2d 218 (1985); *Hegler* v. *State*, 286 Ark. 215, 691 S.W.2d 129 (1985); *Munn* v. *State*, 257 Ark. 1057, 521 S.W.2d 535 (1985). In *Johnson* v. *State*, 17 Ark. App. 82, 703 S.W.2d 745 (1986), the Court of Appeals summarized the constituents of proof required in these cases:

> In sum, § 75-1031.1(c) [Ark. Code Ann. § 5-65-206 (1987)] requires (1) the method of testing must be approved by the Board of Health, (2) the machine must have been certified in the three months preceding arrest, and (3) the operator must have been trained and certified. Neither a senior operator's certificate nor an installation certificate are mentioned in the statute. Simply put, § 75-1031.1 does not require proof of an installation certificate before test results may be admitted into evidence.

Throughout its history this court has shown that it is singularly disinclined to allow an appeal where the state seeks merely a declaration of error, a ruling which does not purport to change the outcome, since the defendant is constitutionally immune from further prosecution. In *State* v. *Hand*, 6 Ark. 169 (1845) and *State* v. *Denton*, 6 Ark. 259 (1845), this court refused to entertain appeals by the state because the defendants had been acquitted and, hence, "the questions sought to be raised are mere abstract questions without any cause legally existing upon which the decisions of this court could have effect." Similarly, in *State* v. *Biscoe*, 12 Ark. 683 (1852), we dismissed the state's appeal because the issue was "simply a dry abstract point of law."

In 1846 the legislature attempted to correct *State* v. *Hand, supra*, by statutory provisions appearing in Goulds Digest, Chap. 52, Sec. 245, which gave a right of appeal by the state. But in *State* v. *Jones*, 22 Ark. 331 (1860), the Supreme Court continued to adhere to the dogma that appeals by the state were merely attempts to authorize "abstract questions of law to be certified to the court for its opinion." *Id.* at 334.

In 1869 the legislature again attempted to facilitate appeals

by the state,[1] this time expressly authorizing the Attorney General to determine when an appeal should be pursued by the state, an agency of government, one might argue, better suited than this court to judge whether the prosecution of criminal cases would be adversely affected by a ruling of the trial bench. That effort met with no greater success. In *State* v. *Cox*, 29 Ark. 115 (1873), the state's appeal was dismissed as being procedurally flawed and in *State* v. *Withrow*, 47 Ark. 552 (1886) the Supreme Court affirmed the trial court in sustaining a demurrer to an indictment for obstructing a public road, finding the state's appeal too triffling—"our time may be more profitably employed than by settling immaterial differences of opinion between prosecuting attorneys and circuit judges."

The trend continued with *State* v. *Spear and Boyce*, 123 Ark. 449, 185 S.W. 788 (1916), *State* v. *Gray*, 160 Ark. 580, 255 S.W. 304 (1923), and *State* v. *Mills*, 160 Ark. 194, 254 S.W. 468 (1923), where the appeals were dismissed as being simply factual disputes. Notably, Chief Justice McCullough and Justice Humphreys dissented in *Gray*, pointing out that the appeal involved a "clear-cut question of law," to which the Attorney General had properly sought an answer, "but the majority have announced the conclusion that the appeal should be dismissed for the reason that it is not of sufficient importance to warrant the appeal."

Today's decision, though consistent with the long tradition, employs a rationale never before resorted to—that because evidentiary rulings by trial courts involve discretion and because we do not reverse such rulings absent an abuse of discretion, we cannot say discretion was abused in this instance. Therefore, reasons the majority, the appeal is not cognizable under Rule 36.10(c). While the view that evidentiary rulings involve a measure of discretion is unquestionably sound, it has scant relevance here. We are not asked to reverse this case for a second trial, but merely to declare for the guidance of the bench and bar that a challenged ruling on evidence was correct or incorrect. Clearly there is something to be gained by our doing so, and nothing whatever to be lost, since the defendant is entirely beyond additional prosecution. That was the course taken in *State* v.

---

[1] See Criminal Code, § 329, from which A.R.Cr.P. Rule 36.10(c) is patterned.

*Dulaney*, 87 Ark. 17, 112 S.W. 158 (1908), one of the rare instances where this court has reached the merits of an appeal by the state. In *Dulaney*, the state proffered testimony of a witness that money paid to a defendant, a state representative, was intended to influence his vote on pending legislation. The trial court rejected the evidence because there was no testimony of an agreement as to a particular bill. The defendant was acquitted and the state appealed. This court declared the rejection of the testimony was error. Abuse of discretion did not concern the court in *Dulaney*, nor did it concern the Court of Appeals in *State* v. *Harvest*, 26 Ark. App. 241, 762 S.W.2d 806 (1989). Nor should it operate in this case to abort a simple ruling on the merits of the question raised.

GLAZE, J., joins in dissent.